IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHANNON LEE and CONNIE ROBINSON Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12-cv- 3078 |
| JEFFREY A. PARSONS, | ) ) | |
| Defendant, | ) ) | |

## REPORT AND RECOMMENATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation regarding the Citation to Discover Assets (d/e 104) served on Defendant Judgment Debtor Jeffrey A. Parsons.

Background

This case was filed against Defendants THR & Associates, Inc. (d/b/a Treasure Hunters Roadshow) and Defendant Jeffrey A. Parsons on March 8, 2012. The Plaintiffs' Complaint was brought on behalf of individuals employed by Defendant THR & Associates, Inc. Plaintiffs allege that Defendant Jeffrey A. Parsons (Parsons) was President and Chief Executive Officer of THR &

Associates, Inc. (THR). The complaint alleges that Defendants THR and Parsons failed to pay the Plaintiff employees' minimum and overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. §206(a) and 29 U.S.C. §207(a)(1).

On September 10, 2012, both Defendants THR and Parsons filed a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of Illinois. On April 5, 2013, the Court dismissed Defendants THR and Parsons from this case due to the filing of their bankruptcy (d/e 69).

On November 14, 2013, the Bankruptcy Court entered a default judgment against Parsons granting an objection to Parsons' discharge in bankruptcy. The Bankruptcy Court denied Parsons a discharge in bankruptcy under the Bankruptcy Code. In denying Parsons' discharge, the Court noted that Parsons had moved to Texas and took property of the bankruptcy estate with him without notifying the Bankruptcy Trustee. The Court found that Parsons, with the intent to hinder, delay, or defraud a creditor, or an officer of the bankruptcy estate, transferred, removed, destroyed, concealed property of the estate, or permitted such things to be done after filing the bankruptcy. (In re: Jeffrey A. Parsons, Br. No. 12-72023, d/e 666, attached as an Exhibit 1 to Plaintiffs' Motion for Relief from Judgment, d/e 84)

On December 20, 2013, this Court reinstated Parsons as a Defendant in this case due to the denial of Parsons' discharge in bankruptcy. (Text Order, 12/20/2013) . On January 16, 2014, Parsons was served with summons in the reinstated case (d/e 91). On April 8, 2014, default judgment was entered against Parsons for unpaid overtime wages and reasonable attorney's fees and costs. The total amount of the judgment is $12,328,811.36. <u>Judgment in a Civil Case entered May 22, 2014 (d/e 103) (Judgment)</u>.

The Citation Proceeding

The Plaintiffs commenced this citation proceeding on Parsons to discover his assets and income available to pay the Judgment. The Court held three hearings on this continued citation proceeding on July 10, 2014, August 27, 2014, and October 1, 2014.

At the conclusion of the October 1, 2014, citation hearing, Plaintiffs asked this Court to direct Parsons to pay a lump sum of $1,200,000.00 and to make ongoing monthly payments of $100,000.00. Parsons claims he is unable to make any payments at this time.

On October 2, 2014, the Court ordered Parsons to turn over all property stored in a warehouse storage facility or locker located at 1805 Sealy Street, Alvin, Texas. Parsons consented to the turnover in open court. The Court, in its October 2, 2014 Opinion, reserved a finding on Plaintiffs' request for a lump sum

payment and ongoing monthly payments.  Opinion entered October 2, 2014 (d/e 121).

This Court is authorized to employ the collection procedures of the state in which it sits, in this case Illinois.  Fed. R. Civ. P. 69(a).  Illinois authorizes citation proceedings to discover a judgment debtor's assets and income and to collect the judgment from such assets and income.  735 ILCS 5/2-1402; Ill. S. Ct. R. 277.  Upon the discovery of assets and income, this Court may order the judgment debtor to make payments from existing assets and to make regular installment payments from available income.  735 ILCS 5/2-1402(c)(1) and (2).  In setting installment payments, the Court must consider, among other things, "the reasonable requirements of the judgment debtor and his or her family." § 5/2-1402(c)(2).

The evidence presented at the hearings shows that Parsons currently operates a business called the National Coin Collectors Association, LLC (NCCA).  Parsons started NCCA in mid-2013.  Parsons testified that he is the sole member and owner of NCCA.  Transcript of Proceedings on July 10, 2014 (d/e 114) (July Transcript), at 21.  NCCA conducts shows using the name Collectors' Roadshow.  NCCA holds these shows in various cities and towns and purchases gold, jewelry, watches, and coins at the shows.  NCCA then resells

the merchandise at a profit. In addition, NCCA conducts estate sales. NCCA takes a commission of 35 to 50 percent on estate sales. Id., at 68.

At the shows NCCA purchases the gold jewelry and coins. NCCA rents facilities in which to hold the shows. NCCA also advertises the shows in order to induce buyers to come to the shows to sell precious metals and jewelry to NCCA. NCCA pays what Parsons characterized during his testimony as "contract laborers" to conduct the shows. Parsons testified that "contract laborers" are paid $600 per week and a percentage of the profits from the shows which they conduct. (Testimony, 10/1/2014 Hearing).[1]

The materials purchased at the shows are packaged and sent to Steve Mileham in Springfield, Illinois. Mileham does business under the name "Gold Link". Mileham sells the gold and silver to purchasers, including refiners of gold, at the current rate for precious metals. (Mileham Testimony, 10/1/2014 Hearing).

In order to finance the shows at which NCCA purchases the precious metals sold by Mileham, NCCA gets loans, or, as Parsons and Mileham describe them, "advances" from Mileham. Mileham testified that he advances funds sufficient to cover the expenses for the shows prior to the shows based upon verbal requests from Parsons. Mileham testified that in 2012, after transferring advances from a prior business in which Parsons was involved, the total of the

---

[1] The recording of the October 1, 2014, citation proceeding will be transcribed and the transcript of the testimony will be filed upon completion.

loans or advances made to Parsons was $274,164.75 (Testimony, 10/1/2014 Hearing, Plaintiffs' Exhibit 6). Substantial advances were paid in cash by Mileham to Parsons' "contract laborers". (Plaintiffs' Exhibit 6, e.g., showing cash advances of $23,000) (Testimony, 10/1/2014 Hearing).

Mileham continued to do business with Parsons in the same manner described above during 2013 and 2014. Mileham testified after receiving precious metals from the shows conducted by NCCA, Mileham would sell precious metals to various precious metal buyers and, after receiving payment, would receive one percent of the price at which he sold the precious metals provided to him by NCCA as profit, and then reduce the loan balance owed by Parsons from the proceeds of the sale. Mileham testified that he continues to make advances to Parsons for costs for additional shows as requested by Parsons. Parsons, at the time of the October 2014 testimony, still maintained a substantial unpaid balance on the loans or advances made to Parsons at his request. (Mileham Testimony, 10/1/2014 Hearing).

NCCA has shown progress toward profitability in 2014. As of December 31, 3013, NCCA had total assets of <$70,870.40>, net income for 2013 of <$363,141.83>, and total equity of <$391,688.89>.[2] <u>Plaintiffs' Exhibit 4</u>, at 50, <u>Balance Sheet as of December 31, 2013 (2013 Balance Sheet)</u>. By August 13,

---

[2] The <> symbols indicate a negative number.

2014, NCCA had significantly reduced this negative situation. NCCA total assets were $228,626.21[3], its net income from January 1, 2014 to August 13, 2014, was $221,923.39, and its total equity was <$218,550.08>. Plaintiffs' Exhibit 4, at 3, Balance Sheet for 2014 dated August 13, 2014 (2014 Balance Sheet).[4] In eight months, NCCA has increased its total assets by $299,496.61 (from <$70,870.40> to $228,626.21), earned $228,626.21 in net income, and decreased its negative total equity position by $173,138.81 (a 44% reduction in negative total equity from <$391,688.89> to <$218,550.08>). During this same period, Parsons has taken a draw of personal income from NCCA of $77,331.64, for a projected annualized average draw of over $10,222.66 per month. 2014 Balance Sheet.

Parsons currently lives in a single family residence located at 2837 Carrera Court, League City, Texas (Residence). Transcript of Proceedings on July 10, 2014 (d/e 114) (July Transcript), at 15. Parsons lives with his girlfriend Kimberly Haberman; their 2 year-old daughter Mayson Parsons; Parsons' 17 year-old daughter Jenna Parsons; and Kimberly Haberman's 22 year-old daughter Brittany Haberman and her 17 year-old daughter Aspen Haberman. Id., at 16.

---

[3] Parsons questioned why $155,336.00 was listed as an asset on the balance sheet and indicated he would have to ask the accountants who prepared the balance sheet. (August Transcript, pages 52-53).

[4] The 2014 Balance Sheet states that it is as of December 31, 2014. The 2014 Balance Sheet, however, is dated August 13, 2014, and Parsons' testified that the information is for the calendar year 2014 to that date. Transcript of Proceedings on August 27, 2014 (d/e 117) (August Transcript), at 57-58. Parsons retained Benjamin Guidry and his firm, Financial Precision Group to prepare the Balance Sheet using information provided by Parsons. (August Transcript, d/e 117, at 14-16)

Kimberly Haberman does not work outside the home.  Kimberly Haberman receives child support payments and a pension from the United States Army.  Id., at 17.  The Residence is leased by Kimberly Haberman, but Parsons pays the rent.  Id.  The rent is $3,000.00 per month.  Id.[5]  Parsons and Kimberly Haberman pay the utilities jointly.  Id., at 18.  Parsons does not own a car and uses his son's cars, trucks, and trailers.  August Transcript, at 52.

Parsons testified that he is involved in a divorce proceeding with Jennifer Parsons.  It is unclear from the transcript whether they are yet divorced.  Parsons testified that Jennifer lives in a residence located at 23200 Clemens Road, Athens, Illinois.  Parsons' 15 year-old daughter Jelena Parsons lives with her mother, Jennifer Parsons.  July Transcript, at 73.  Parsons is not paying any of the costs associated with this home in Illinois.  Parsons also is not paying any court-ordered support.  Parsons testified that each parent is responsible for the teenage daughter living with him or her.  July Transcript, at 85-86.

During his testimony on October 1, 2014, Parsons indicated that he had property stored in a warehouse storage facility or locker located at 1805 Sealy Street, Alvin, Texas.  On October 2, 2014, the Court ordered Parsons to turn over the property located at 1805 Sealy Street, Alvin, Texas, to the Plaintiffs on

---

[5] The Plaintiffs' attorney indicated that Parsons' son Jacob Parsons stated in a bankruptcy filing that he, Jacob Parsons, paid rent of $3,700 per month for the Residence.  August Transcript, at 48.  Parsons testified that his son was incorrect if he made such a statement in a bankruptcy filing.  Id.  The Plaintiffs did not attempt to admit the referenced bankruptcy filing into evidence.

October 15, 2014, subject to the terms set forth in the written Opinion of the Court (d/e 121).

Other than the property located in the Texas warehouse or storage locker facility described above, the testimony and evidence presented at the three citation hearings disclosed no other significant assets of Parsons from which a large lump sum payment could be made. Therefore, Plaintiffs' request that the Court order a lump sum payment of $1,200,000 is denied.

While the Illinois Wage Garnishment Act, 735 ILCS 5/12-803, places limitations (generally 15%) on the amount of a debtor's wages, salary, commissions, and bonuses subject to collection under a wage deduction order, there is no limitation, other than the provisions of the supplementary proceedings statute cited above (735 ILCS 5/2-1402), which limits the percentage of income that a judgment debtor can be ordered to turn over directly to the judgment creditor. Weinco, Inc. v. Scene Three, Inc., 29 F.3d 329 (7th Cir. 1994). Thus, the Court must consider, among other things, "the reasonable requirements of the judgment debtor and his or her family".

Based on the evidence discussed above, it seems clear that Parsons should be required to make regular installment payments to the Plaintiffs. Parsons owes the Plaintiffs over $12 million. Parsons is making roughly $123,730.00 a year before taxes, and his company is producing over

$300,000.00 in net income and is increasing in value, although it still has a negative equity value.  Parsons is obligated to support his two daughters Mayson and Jenna.  His ex-wife, or soon-to-be ex-wife, Jennifer, is responsible for their daughter Jelena.  Parsons is living with Mayson's mother, Kimberly Haberman, and Kimberly's other children, but he is not legally obligated to support them.

Given these circumstances, the Court recommends that it is appropriate to order Parsons to pay the Plaintiffs installment payments of $5,155.00  per month (50% of the projected annual draw based upon the documents provided by Parsons), or 50% of Parsons' actual monthly income, whichever is greater, with the first payment due on October 31, 2014, and each subsequent payment due on the last calendar day of each succeeding month; provided however, that if the last calendar day of a month is a Saturday, Sunday, or federal holiday, the due date for that month shall be the last calendar day of that month that is not a Saturday, Sunday, or federal holiday.

The Court recommends that all payments shall be made payable to the named Plaintiffs Shannon Lee and Connie Robinson, and Stephan Zouras LLP, as attorneys for Plaintiffs, and recommends that all payments are to be delivered to the law offices of Stephan Zouras LLP, c/o James B. Zouras, located at 205 North Michigan Ave., Suite 2560, Chicago, IL  60601.   The Court recommends

that all payments be made by certified check and be mailed by 5:00 p.m. local time on the due date.

The Court recognizes that these payments will make hardly a dent in the $12 million that Parsons owes these Plaintiffs, but, based on the evidence presented, the sum is an amount that he can reasonably pay under his current circumstances. Either party may seek to modify the installment payments in the future should circumstances change. 735 ILCS 5/2-1402(c)(2).

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986). See <u>Local Rule</u> 72.2.

ENTER: October 10, 2014

*s/ Tom Schanzle-Haskins*<br>UNITED STATES MAGISTRATE JUDGE